IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

In Re:

DESTINY ENTERPRISES, LLC,

Debtor.

In Chapter 11 Proceedings

No. 2-07-bk-00542

MEMORANDUM DECISION

## I. Preliminary Statement

On May 1, 2008, Destiny Enterprises LLC, the Debtor, and Elmer R. Parsons ("Parsons') filed a motion to have a settlement between them approved by this Court.[1] Creditors Don Nace ("Nace") and Arizona Machinery Company ("Arizona Machinery") initially objected. Arizona Machinery subsequentlydecided not to participate in any evidentiary hearing. As will be set forth hereinafter, it is clear that the parties, other than the Debtor, did proceed with the

---

**1.** *See* Administrative Case, Docket Entry No. 193 . There were numerous other debtor and non-debtor parties to the settlement, including the manager of the Debtor, in his individual capacity, Sunrise International LLC, a debtor in Case No.05-9335-RTB, Dusel International LLC, Destiny Opportunities, Inc., a debtor in Case No. 06-593-RJH, the Marilyn Trust, Elmer R. Parsons Charitable Remainder Trust, and the Elmer R. Parsons Charitable Remainder Unitrust. The Marilyn Trust is the sole shareholder of the Debtor. For purposes of this decision, the term "Parsons" shall include the aforesaid Trusts for which Elmer R. Parsons serves as Trustee.

1

settlement, and the issues, other than the remaining issue on whether the Debtor should dismiss its fraudulent conveyance action against Parsons, were resolved without this Court's approval. Various pre-trial proceedings were held in this matter, and the Marilyn Trust and Nace filed pre-trial memoranda of law.[2] An evidentiary hearing was held on this matter on July 2, 2008. Thereafter the Court took the matter under advisement. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157. (West 2008).

## II. The Confirmation of the Debtor's Plan of Reorganization.

On January 8, 2008, this Court executed an order confirming the Debtor's plan of reorganization, as amended.[3] In the Order of Confirmation, the Court stated, in its Findings of Fact, that Parsons had an estimated claim in the amount of $4,700,000.[4] As a result, in trying to move forward with consummation of the Plan, the Debtor has been required to escrow, either in the event of a refinancing of the secured obligations of the Debtor or a sale of the Debtor's real property, the estimated claim of Parsons in the amount of $4,700,000. Although the Debtor has reserved the right to proceed with a contested hearing on the actual or allowed amount of the Parsons' claim, the Debtor's requirement to escrow the estimated amount has made it difficult for the Debtor to obtain refinancing on its 75 acres of unimproved land in Buckeye, Arizona ("Property"). If the Debtor proceeds with an auction sale of its Property, as provided for in the Plan as an alternative, the Debtor believes that it must still escrow the amount of $4,700,000 for Parsons. The Debtor currently intends to proceed with an auction sale of its Property on July 16,

---

**2.** Hearings were conducted on the settlement on May 8 and 15, 2008, and July 2, 2008, and the Marilyn Trust filed its pre-hearing memorandum of law on May 15, 2008, and Nace filed its pre-hearing brief on May 14, 2008.

**3.** *See* Administrative Case, Docket Entry No. 161.

**4.** Id. at Findings of Fact D(3).

2

2008, although there is the possibility that the Debtor, instead, will arrange financing to pay its creditors in full.

### III. The Settlement Agreement Between the Debtor, the Debtor's Principal, and Parsons

On May 5, 2008, at an initial hearing on whether the settlement should be approved, the Debtor notified the Court that the Debtor's manager, in his individual capacity, the Marilyn Trust, and Parsons had decided that they did not need Court approval for most of the settlement and that they had started to consummate same. Subsequently the parties reduced the settlement to a written form and filed a motion to seek approval of only a portion of the settlement. Nace filed an objection to the settlement. The other creditors of the Debtor stated their support of the settlement in various preliminary hearings concerning the settlement, and as noted, Arizona Machinery did not actively proceed with its objection. The Court ultimately conducted an evidentiary hearing on the settlement on July 2, 2008.

In opposition to approval of the settlement, Nace has raised the argument that the Debtor's objection to Nace's proof of claim is untimely and precluded by <u>res judicata</u> and that the proposed settlement is not fair and equitable. It is unclear why Nace raises the issue as to the Debtor's objection to his proof of claim. First, that issue is not before the Court; the Court is only concerned with the settlement. Second, from the Court's review of the Debtor's schedules and the confirmed plan, Nace's argument may not have merit.[5] Therefore, this decision only concerns whether the settlement agreement should be approved at this time. The Debtor also

---

**5.** For instance, the Debtor's schedules, a portion of which were admitted as Exhibit 3, reflect that Nace had several claims which were listed as disputed. The Debtor's Amended Plan, which was confirmed, also provides that an "allowed claim" is only the claim as finally determined by the Court, if the claim has been listed as disputed. Therefore, since Nace's claims against the Debtor have been listed as disputed, the Debtor's confirmed Amended Plan provides that the Nace claims must be resolved, by trial or settlement, before they will be paid as allowed claims under the Plan. In this case, the Debtor did file an objection to the Nace proof of claim within the time parameters as stated in the confirmed plan.

3

initially questioned whether Nace had standing to proceed with his objection at the evidentiary hearing, since Nace had withdrawn his filed proof of claim just prior to the hearing.[6] However, it became clear, at the evidentiary hearing, that Nace still had at least one other claim against the Debtor on which he had standing to proceed as an interested party.

The settlement between the parties provides that the parties shall release the claims that they have against each other, except for any claims that Parsons or the Debtor may assert against each other in this case, for the transfer of a 50 percent ownership interest in the Debtor from the Marilyn Trust to Parsons. In the modification of the settlement agreement, dated April 25, 2008,[7] the manager of the Debtor, in his individual capacity, and Parsons acknowledge that to the extent the agreement affects any assets of, or claims against the Debtor, that bankruptcy court approval is necessary as to those provisions. However, the parties also agree, excluding the Debtor, that Parsons shall withdraw, abandon, or release any claims that he may have against the manager of the Debtor or other parties, except for the counterclaims or other claims that remain against the Debtor in Adversary Proceeding No. 07-ap-00518. Parsons also agrees to satisfy the state court judgment against the manager of the Debtor in the amount of $4,923,690.77.[8]

It is clear that the Debtor's manager and Parsons proceeded to effectuate the settlement even though this Court had not yet approved it. The reason given by the parties was, and continues to be, that only a portion of the settlement agreement needs to be approved by this Court. As a result, at the evidentiary hearing on the settlement, Nace presented evidence, which was stipulated to by the Debtor, that the $4,923, 690.77 judgment obtained against the Debtor's

---

**6.** Nace filed his "Notice of Withdrawal of Proof of Claim Number 6" on June 10, 2008. *See* Docket Entry No. 230.

**7.** *See* Exhibit D.

**8.** There were other terms and conditions to the settlement agreement and its modification relating to other debtors or non-debtor parties. The parties state that they did obtain bankruptcy court approval from the judges presiding over the other debtor entities.

4

manager, in his individual capacity, had been satisfied.[9] This judgment had previously served as the basis for the estimated claim of Parsons in this case in the amount of $4,700,000. The Debtor and Parsons also presented evidence that Parsons had recently provided at least the sum of $50,000 to the Debtor, so that the Debtor could proceed with the option of obtaining a refinancing of the various secured obligations that encumbered its Property. In essence, Parsons had already started to act as an individual with an ownership interest in the Debtor trying to provide the necessary capital to the Debtor so that it might consummate its Plan.

Because the dispute between the parties essentially devolves to whether the Debtor should dismiss its fraudulent conveyance action against Parsons, as embodied in Adversary Proceeding No. 07-ap-00518, this Court will consider that issue separately.

### IV.  The Complaint for Fraudulent Transfer

On September 24, 2007, the Debtor commenced an action against Parsons concerning the receipt by him and/or one of his entities ("Parsons") of several pre-petition fraudulent transfers.[10] Apparently on June 3, 2003, Parsons made a loan to the Debtor in the original principal amount of $150,000 for which he received a deed of trust on the Property as security. On March 22, 2006, the Debtor paid Parsons the sum of $225,225 in satisfaction of the June 2003 Note and Deed of Trust.[11] The Debtor and one of its affiliated entities also became liable to Parsons on an obligation evidenced by a promissory note executed by the Debtor and the affiliate in 2005 in the original principal amount of $427,300. The Debtor paid off the 2005

---

**9.** Exhibit A and stipulation of Debtor's counsel on the record on July 2, 2008.

**10.** Adversary Proceeding No. 07-ap-00518, Docket Entry No. 1.

**11.** *See* Adversary Proceeding No. 07-ap-00518, Docket No. 1, the Complaint, Paragraphs 52 and 53, and the Parson's Answer wherein said allegations are admitted.

5

Note, by tendering the sum of $499,177.76 to Parsons.[12] Based upon these and other transactions, the Debtor seeks to recover these payments under 11 U.S.C. §§548, 544, and 550. The Debtor also objected to the proof of claim filed by Parsons in this case as a part of the Adversary Proceeding.

As a part of his Answer, Parsons asserts a counterclaim against the Debtor, seeking a judgment of reverse veil piercing against the Debtor, its manager, and related entities whereby the obligations of the manager or his entities would be deemed to be the liabilities of the Debtor. Ultimately, Parsons wanted to have his $4,923,690.77 judgment obtained against the Debtor's manager in Arizona State Court be deemed a liability of the Debtor and satisfied from the Property of the Debtor.[13]

At the evidentiary hearing on July 2, 2008, counsel for Nace stated that the fraudulent conveyance action was of value to the Debtor's bankruptcy estate. As a result, the settlement agreement between the Debtor and Parsons should not be approved by the Court. Although it is now clear to this court that the State Court judgment obtained by Parsons against the Debtor's manager has now been satisfied, that is not the end of the inquiry.[14] The Debtor is seeking in the fraudulent conveyance action the return of at least $724,402.76 ($225,225 and $499,177.76) as outlined above. If those funds are recovered, conceivably Parsons would be

---

**12.** Id. at Paragraphs 43, 44, 53, and 54, and the Parson's Answer wherein said allegations are admitted.

**13.** *See* Docket Entry No. 4, Answer at Part II, pages 10-15.

**14.** Although Parsons' counsel argues that the satisfaction of the State Court Judgment against the Debtor's manager does not vitiate the reverse veil piercing claim of Parsons against the Debtor in the same amount, the Court believes that some type of collateral estoppel or other judicial estoppel argument may be asserted successfully against Parsons. See Paine v. Griffin (In re Paine), 283 B.R. 33 38-39 (9th Cir. Bap. 2002); In re Haynes, 97 B.R. 1007 (9th Cir. B.A.P. 1989). If the reverse veil piercing is successful, the Debtor no longer exists as a separate entity. Therefore, all assets of the Debtor become the assets of the Debtor's manager. At that point, only valid obligations against the Debtor's manager should be paid. As noted, however, the Parsons judgment against the Debtor's manager no longer exits; it has been satisfied.

6

entitled to file a proof of claim for the amounts so surrendered.  Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248 (1st Cir.1991).  Thus, the recovery of funds for the Debtor would result in the concomitant assertion of a claim by Parsons against the Debtor.  Because Parson had duly perfected Deeds of Trust as to the Notes, Parsons might also assert that upon return of the funds, he should be reinstated to a secured claim against the Debtor.  Morever, at the July 2, 2008 evidentiary hearing, the uncontroverted testimony of the Debtor's manager was that the Debtor would incur $40,000 to $60,000 in legal fees in proceeding with the fraudulent conveyance action to judgment.[15]

Of importance, however, is the Debtor's evidence that it was problematic whether the Debtor would ever obtain a judgment in the action against Parsons.  Of concern was the fact that as the various liens of Parsons and third parties were placed on the Debtor's property in 2003, 2004 and 2005, the Debtor remained solvent, and the transfers did not, at any point in time, render the Debtor insolvent.[16]  Thus, the Debtor believed that its likelihood of success in the action against Parsons was not great.

The Declaration and testimony of the Debtor's manager also were clear that the complexity of the litigation, particularly trying to show the insolvency of the Debtor at all relevant times, would make it difficult for the Debtor to obtain a judgment against Parsons.  It was also clear at the hearing that Nace was the only party objecting to the settlement.  The other creditors of the Debtor have been in support of the settlement or, at least, no longer opposing it.  Based upon the foregoing, the factors, as set forth in the decision of In re Woodson, 839 F.2d 610 (9th Cir. 1988) have been satisfied.

It also appears that Nace argues that the Debtor is solely relying on the $4,923,690.77 judgment of Parsons against the Debtor's manager as the consideration for the Debtor's entering into the settlement agreement.  If so, Nace believes that such consideration is

---

**15.** Exhibit 2 at Paragraph 14.

**16.** Id. at Paragraph 15.

of no value and cannot support the settlement between the parties. In essence, "past consideration cannot count as a bargained-for benefit, since it has already occurred." Calisle v. T&R Excavating, Inc., 123 Ohio App. 3d 277, 285, 704 N.E. 39, 44 (1997). However, when the Court considers whether to approve a settlement agreement, the factors, as set forth in Woodson, are controlling. Presumably those factors take into account that necessary consideration has been provided by the parties to enter into the settlement agreement. In any event, the Courts which have considered the issue of consideration for a settlement agreement conclude that it may be de minimus. Murphy v. T. Rowe Price Prime Reserve Fund, Inc., 8 F.3d 1420 (9th Cir. 1993); In re Ionosphere Clubs, Inc., 156 B.R. 414 (S.D.N.Y.,1993) (value of compromise in bankruptcy case need not be dollar-for-dollar the equivalent of the claim). As a result, the Court concludes that there is sufficient consideration to support the settlement agreement.

Finally, Nace argues that even if the factors of Woodson are met, there is a separate test to ensure that the settlement agreement is "fair and equitable," similar to the test that is utilized to determine whether a debtor's plan should nevertheless be confirmed, or "crammed down" over the objections of a creditor or creditor class. While it is true that the Woodson decision does refer, preliminarily, that a settlement should be "fair and equitable" and refers the parties to 11 U.S.C. §1129(b), the cram down provisions of the Code, the factors set forth in the decision appear to be the important litmus test in determining whether to approve a settlement. In any event, the Ninth Circuit has previously held that if a debtor is engaged in litigation with a particular creditor, that creditor may be separately classified by the debtor, and the plan may still be confirmed as fair and equitable. *See* In re Johnston, 21 F.3d 323 (9th Cir. 1994). In this case, the Debtor has separately classified the claims of Parsons and has now settled them consistent with the factors as enunciated by the Ninth Circuit. The Court sees no basis to disapprove the settlement.

8

## V. Conclusion

The Court has reviewed the evidence presented by the parties at the hearing on July 2, 2008, and has considered the legal theories advanced by the parties concerning whether the settlement agreement between the Debtor and Parsons should be approved even though the non-debtor parties to the settlement have proceeded separately with consummation. The Debtor has set forth sufficient factors, consistent with the decision of <u>In re Woodson</u>, 839 F.2d 610 (9th Cir. 1988) that this Court should approve the settlement between the Debtor and the other parties to the agreement. The Debtor need no longer set aside the sum of $4,700,000 as the estimated claim of Parsons concerning a refinancing or sale of the Debtor's Property. The Court shall execute a separate order concerning this decision.

DATED this 14th day of July, 2008.

_____
Honorable Sarah Sharer Curley
United States Bankruptcy Judge